### ANGELO VERRENGIA'S CASE.

Suffolk.    October 3, 1933. — November 27, 1933.

Present: RUGG, C.J., CROSBY, PIERCE, DONAHUE, & LUMMUS, JJ.

*Workmen's Compensation Act*, Incapacity.

At a hearing by the Industrial Accident Board in proceedings under the workmen's compensation act on the question of the employee's incapacity subsequent to a date when payment of compensation for an injury to his head had been discontinued, there was evidence that he frequently had had fainting or dizzy spells. Two physicians testified that physical examinations of the employee were negative and that in

their opinion he was able to work "the same as he did before the accident." An impartial physician stated in his report that, while the employee displayed psychoneurotic symptoms which "could be precipitated by the accident," they were "nót all due" thereto and that certain personal and family difficulties encountered by the employee "must be taken into consideration" and were "more responsible in acting as external and internal emotional factors for the persistence of the neurotic symptoms . . . than the precipitating effect of the accident itself." The board awarded compensation for partial disability. Upon certification to the Superior Court, a decree was entered dismissing the claim. The employee appealed. *Held*, that the evidence did not warrant a finding by the board that any present incapacity of the employee was caused by the accident, and did not justify an award of compensation; and the decree of the Superior Court was affirmed.

CERTIFICATION to the Superior Court under the provisions of the workmen's compensation act of a decision by the Industrial Accident Board awarding compensation.

The case was heard by a single member of the board on September 28, 1932, on the question of the employee's incapacity subsequent to April 8, 1932; and by the board in review on December 22, 1932. Material evidence and findings by the single member and the board are described in the opinion. By order of *F. T. Hammond*, J., a decree dismissing the claim was entered. The employee appealed.

The case was submitted on briefs.

*J. Bear & R. M. Gardiner*, for the claimant.

*V. L. Scanlon*, for the insurer.

CROSBY, J. On March 13, 1931, the employee received a blow on his head while in the employ of the insured and was paid compensation at the rate of $17.50 weekly up to April 8, 1932, at which time it was discontinued by the Industrial Accident Board because he had been sentenced to prison. The single member, upon the evidence, found that all incapacity due to the injury ceased on or about April 8, 1932, and dismissed the claim. The report of the single member contains all the material evidence. The employee filed a claim for review. The reviewing board found "upon all the evidence, that dating from April 8, 1932, . . . he has been partially disabled; that he has had an earning capacity of $15 per week," and is entitled to partial compensation from

that date.   A judge of the Superior Court entered a decree
which recited "that it appearing that on March 18, 1932,
the employee was admitted to the house of correction
under a sentence of three months and was not released
therefrom until June, 1932, and it further appearing that
there is no evidence that would warrant a finding that
thereafter he was incapacitated from work by reason of his
injury of March 13, 1931, it is ordered that his claim for
compensation be dismissed." From this decree the em-
ployee appealed.

There was evidence that during his imprisonment, and
after his release at the expiration of his sentence, he fre-
quently had fainting or dizzy spells which were designated
as "fits" by some of the witnesses who testified before the
single member.   Several physicians who examined the em-
ployee testified respecting his condition.   Dr. O. S. Marshall,
who was connected with the prison, testified that the
complete physical examination was essentially negative;
that he could not detect any physical disability; that he
examined the employee after he had a fainting spell and
diagnosed it as "a spell of hysteria" and that so far as
physical examination was concerned he saw no reason why
the employee could not work.   Dr. Henry C. Marble, called
by the insurer, testified that he examined the employee
November 30, 1931, and on July 12, 1932; that at the first
examination the employee seemed nervous; that the phys-
ical examination was entirely negative; that while in his
office the employee had a seizure; that at the second ex-
amination he did not appear so nervous; that the physical
examination was again negative except that he had gained
about ten pounds in weight.   From both examinations the
opinion of the witness was that the employee was able "to
do some work, or the same as he did before the accident."
It is plain from the testimony of the physicians above re-
ferred to that a finding of incapacity, total or partial, could
not properly be made.

Dr. Isador H. Coriat, the impartial physician, submitted
to the single member a report dated October 8, 1932.   In
this report it is stated that after the accident and when the

employee was in a hospital there were weakness, headache, dizziness and nosebleed, but he was mentally clear. An examination of the skull taken at the hospital did not reveal any evidence of fracture. He was discharged improved in that he had less dizziness and headache. After leaving the hospital he was at home for two days and then was sent to another hospital where he remained from March 27, 1931, to April 13 following, and was discharged improved. While in the last hospital he had constant headaches over the area where he was injured and dizziness and "fits" which would come on suddenly and last two or three hours, and then he would become weak, have headaches and tremble all over. Since leaving the hospital and up to the present time, headaches, dizzy spells and fits have continued, and sleep has been poor because of headaches and pain in the back of the neck. "While the first impression was that of a concussional syndrome this patient more likely has a psychoneurosis which could be precipitated by the accident." "In my opinion the persistence of psychoneurotic symptoms up to the present, that is, headaches, dizzy spells and 'fits,' is not all due to the accident, but several other external emotional factors must be taken into consideration. These factors are the death of the employee's wife . . . , the household difficulties which resulted from her death, the fact of having been in the House of Correction for three months, and the present serious illness of his youngest child. All these latter are more responsible in acting as external and internal emotional factors for the persistence of the neurotic symptoms up to the present, than the precipitating effect of the accident itself. The prognosis for recovery is good and I feel that this employee is capable of light occupation at present and such occupation should be encouraged . . . ." It thus appears from the report of the impartial physician that it is a reasonable inference that the present condition of the employee is due in part to the death of his wife, the household difficulties which resulted from her death, his imprisonment for three months, and the present serious illness of his youngest child, and is also due in part to the injury to his head; but there is no affirmative evidence that any

substantial part of his present incapacity was due to his injury. In the absence of such evidence a finding that the present incapacity to work was caused by the accident was without evidence to support it. Accordingly a decree was properly entered dismissing the claim.

As there was no evidence which would warrant a finding of partial incapacity due to the injury the question whether his confinement in prison since he was injured is a bar to the receipt of compensation need not be considered.

*Decree affirmed.*